# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OXFORD IMMUNOTEC LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| QIAGEN N.V., | ) |
| QIAGEN, INC., | ) |
| QUEST DIAGNOSTICS, INC., and | ) |
| LABORATORY CORPORATION OF | ) |
| AMERICA HOLDINGS, | ) |
| | ) |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Oxford Immunotec Limited ("Oxford"), by its attorneys, presents this Complaint for Patent Infringement against Qiagen N.V., Qiagen, Inc., Quest Diagnostics, Inc., and Laboratory Corporation of America Holdings (collectively, "Defendants"), and hereby alleges as follows:

## OXFORD AND ITS INNOVATIVE DIAGNOSTIC TECHNOLOGY

### Oxford Immunotec Limited

1. Plaintiff Oxford is a corporation organized under the laws of England and Wales, with its corporate headquarters located at 94C Innovation Drive, Milton Park, Abingdon, Oxfordshire, OX14 4RZ, United Kingdom. Oxford's U.S. operations are directed from Massachusetts, through its wholly-owned subsidiary, Oxford Immunotec, Inc., located at 700 Nickerson Road in Marlborough, Massachusetts.

2.      Oxford is a technology leader in providing advanced, innovative tests in the field of immunology.  Oxford's diagnostic platforms assist healthcare providers by informing the diagnosis, prognosis, and monitoring of patients with immune-regulated conditions.

3.      The Oxford patents at issue here generally relate to means for diagnosing infection with or exposure to a mycobacterium that expresses certain proteins.  Testing methods available before development of the patented technology included a test that relied on identification of the mycobacterium that causes tuberculosis ("TB") (*Mycobacterium tuberculosis*).  That test could take up to eight weeks to provide results.  The most prevalent test, the tuberculin skin test ("TST"), required intradermally injecting a patient with a purified protein derivative ("PPD") of the mycobacterium and, 48 to 72 hours later, observing whether there had been a reaction to the PPD.  The TST suffers from subjective variation in interpreting the results.  It also has low sensitivity and specificity, resulting in both false positives and false negatives, and is unreliable in people previously vaccinated against TB.

4.      To address these and other deficiencies, the inventors of the patents-in-suit developed innovative methods for diagnosing TB infection.  The patented inventions addressed a longstanding need for a faster and more reliable method of diagnosing TB infection.  The asserted patents claim tests for mycobacterium infection, including TB, in which a blood sample is drawn and then exposed to certain peptide antigens.  The specific peptide antigens are sequences that simulate ESAT-6 and are recognized by T-cells of a person previously exposed to or infected with TB, prompting the T-cells to secrete cytokines, including interferon-$\gamma$ ("IFN-$\gamma$").  By binding the IFN-$\gamma$ to a binding agent, such as an antibody, the amount of IFN-$\gamma$ can be quantified and measured, thereby effecting the diagnosis of infection.

**The Patents-In-Suit**

5.      United States Patent No. 7,632,646, entitled "Tuberculosis Diagnostic Test," (the "'646 patent") was duly and legally issued on December 15, 2009.  A copy of the '646 patent is attached as Exhibit A.  Oxford is the assignee and owner of all right, title, and interest in the '646 patent, and has the right to collect damages for the entire period of and relevant to infringement, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

6.      United States Patent No. 7,901,898, entitled "Tuberculosis Diagnostic Test," (the "'898 patent") was duly and legally issued on March 8, 2011.  A copy of the '898 patent is attached as Exhibit B.  Oxford is the assignee and owner of all right, title, and interest in the '898 patent, and has the right to collect damages for the entire period of and relevant to infringement, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

7.      United States Patent No. 8,216,795, entitled "Tuberculosis Diagnostic Test," (the "'795 patent") was duly and legally issued on July 10, 2012.  A copy of the '795 patent is attached as Exhibit C.  Oxford is the assignee and owner of all right, title, and interest in the '795 patent, and has the right to collect damages for the entire period of and relevant to infringement, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

8.      United States Patent No. 8,507,211, entitled "Tuberculosis Diagnostic Test," (the "'211 patent") was duly and legally issued on August 13, 2013.  A copy of the '211 patent is attached as Exhibit D.  Oxford is the assignee and owner of all right, title, and interest in the '211 patent, and has the right to collect damages for the entire period of and relevant to infringement,

including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

9.     United States Patent No. 8,617,821, entitled "Assay Method for Peptide Specific T-Cells," (the "'821 patent") was duly and legally issued on December 31, 2013.  A copy of the '821 patent is attached as Exhibit E.  Oxford is the assignee and owner of all right, title, and interest in the '821 patent, and has the right to collect damages for the entire period of and relevant to infringement, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

10.    United States Patent No. 9,005,902, entitled "Tuberculosis Diagnostic Test," (the "'902 patent") was duly and legally issued on April 14, 2015.  A copy of the '902 patent is attached as Exhibit F.  Oxford is the assignee and owner of all right, title, and interest in the '902 patent, and has the right to collect damages for the entire period of and relevant to infringement, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

## THE DEFENDANTS AND THEIR INFRINGING TECHNOLOGY

11.    Defendant Qiagen N.V. is a Dutch limited liability company doing business in the United States through its subsidiary, Qiagen, Inc.  Qiagen N.V., either itself or through its agent, Qiagen, Inc., makes, uses, sells, offers to sell in, and/or imports into, the United States, *in vitro* diagnostic tests for the detection of TB infection, including both QuantiFERON-TB Gold In-Tube Test ("QFT-Gold") and QuantiFERON-TB Gold Plus ("QFT-Plus").

12.    Defendant Qiagen, Inc. is a California corporation having a principal place of business in Germantown, Maryland.  Qiagen, Inc. may be served through its registered agent, Corporation Service Company at 84 State Street, Boston, Massachusetts.  Qiagen, Inc. makes,

uses, sells, offers to sell in, and/or imports into, the United States, QFT-Gold and QFT-Plus. Qiagen N.V. and Qiagen, Inc. are collectively referred to herein as "Qiagen."

13.     Defendant Quest Diagnostics, Inc. ("Quest") is a Delaware corporation, having a principal place of business in Madison, New Jersey.  Quest does business in Massachusetts, either directly or through its agent, Quest Diagnostics LLC, which is registered to do business in Massachusetts.  Quest uses, sells, and/or offers to sell QFT-Gold in the United States.

14.     Defendant Laboratory Corporation of America Holdings ("LabCorp") is a Delaware corporation having a principal place of business in Burlington, North Carolina. LabCorp may be served through its registered agent, Corporation Service Company at 84 State Street, Boston, Massachusetts.  LabCorp uses, sells, and/or offers to sell QFT-Gold in the United States.

15.     QFT-Gold and QFT-Plus (collectively, "QFT Products") are tests used to aid in the diagnosis of TB infection.

16.     Both QFT-Gold and QFT-Plus, like the patented technology, involve exposing a blood sample to certain peptide antigens to stimulate expression of IFN-γ by T-cells.  The detection of expressed IFN-γ is accomplished using enzyme-linked immunosorbent assay ("ELISA") technology in both QFT Products.

17.     QFT-Gold uses the peptide antigens that simulate ESAT-6 as claimed in the asserted patents as well as peptide antigens that simulate CFP-10 and TB7.7.  The T-cells of persons previously exposed to or infected with TB recognize these protein antigens and secrete IFN-γ, among other cytokines.  The detection of IFN-γ secretion in response to the antigens forms the basis of the diagnostic tests.

18. QFT-Plus, on information and belief, also uses the peptide antigens that simulate ESAT-6 claimed in the asserted patents. QFT-Plus includes a mixture of peptide antigens that simulate only ESAT-6 and CFP-10, but otherwise functions the same as QFT-Gold.

## JURISDICTION AND VENUE

19. This is an action for patent infringement arising under the patent laws of the United States, Title 35, Unites States Code § 1, *et seq*.

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. The Court has personal jurisdiction over Qiagen N.V. because Qiagen N.V., among other things, either itself or through its agent, Qiagen, Inc., conducts business in and avails itself of the laws of the Commonwealth of Massachusetts. In addition, Qiagen N.V., through its own acts and/or through the acts of its affiliated companies (acting as its agents or alter egos) makes, uses, offers to sell, sells (directly or through intermediaries), licenses, supplies in, and/or imports into, this District and elsewhere in the United States, the accused products and services described herein, through regular distribution channels, knowing such products and services would be used, offered for sale, and/or sold in this District.

22. The Court has personal jurisdiction over Qiagen, Inc. because Qiagen, Inc., among other things, conducts business in and avails itself of the laws of the Commonwealth of Massachusetts. Qiagen, Inc. is registered to do business in Massachusetts and has appointed an agent for service of process in Massachusetts. Qiagen, Inc. makes, uses, sells, offers to sell in, and/or imports into, this District and elsewhere in the United States, QFT-Gold and QFT-Plus.

23. The Court has personal jurisdiction over Quest because Quest, among other things, either itself or through its agent, Quest Diagnostics LLC, conducts business in and avails

itself of the laws of the Commonwealth of Massachusetts.  In addition, Quest, through its own acts and/or through the acts of its affiliated companies (acting as its agents or alter egos) uses, offers to sell, and/or sells (directly or through intermediaries), in this District and elsewhere in the United States, the accused products and services described herein, through regular distribution channels, knowing such products and services would be used, offered for sale, and/or sold in this District.

24. The Court has personal jurisdiction over LabCorp because LabCorp, among other things, conducts business in and avails itself of the laws of the Commonwealth of Massachusetts. LabCorp is registered to do business in Massachusetts and has appointed an agent for service of process in Massachusetts.  In addition, LabCorp, through its own acts and/or through the acts of its affiliated companies (acting as its agents or alter egos) uses, offers to sell, and/or sells (directly or through intermediaries), in this District and elsewhere in the United States, the accused products and services described herein, through regular distribution channels, knowing such products and services would be used, offered for sale, and/or sold in this District.

25. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b).

## COUNT I
### Infringement of the '646 Patent

26. The allegations contained in the preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

27. Defendants are, and have been, on notice of the '646 patent, at least as of the filing of this lawsuit.

28. By making, using, selling, offering to sell in, and/or importing into, the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe

one or more claims of the '646 patent, including at least claim 7, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '646 patent, including at least claim 7, under 35 U.S.C. § 271(a).

29. Qiagen is actively inducing infringement of at least claim 7 of the '646 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in, and/or import into, the United States, at least QFT-Gold. Qiagen has known of the '646 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more claims of the '646 patent, including at least claim 7. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

30. Qiagen is contributorily infringing the '646 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of one or more claims of the '646 patent, including at least claim 7. QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use. At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that QFT-Gold is especially made or especially adapted for a use that infringes the '646 patent, particularly because QFT-Gold uses the peptide antigens claimed by the '646 patent. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

31. Defendants' continued infringement of the '646 patent is willful. For example, at least as of the filing of this Complaint, Defendants have known about the '646 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions constituted infringement of at least claim 7 of the '646 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

32. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '646 patent. Oxford has been, and will continue to be, irreparably harmed unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

## COUNT II
### Infringement of the '898 Patent

33. The allegations contained in paragraphs one through twenty-five are hereby incorporated by reference as though fully set forth herein.

34. Defendants are, and have been, on notice of the '898 patent, at least as of the filing of this lawsuit.

35. By making, using, selling, offering to sell in, and/or importing, into the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe one or more claims of the '898 patent, including at least claim 17, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '898 patent, including at least claim 17, under 35 U.S.C. § 271(a).

36. Qiagen is actively inducing infringement of at least claim 17 of the '898 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in,

and/or import into, the United States, at least QFT-Gold.  Qiagen has known of the '898 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more claims of the '898 patent, including at least claim 17.  Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

37. Qiagen is contributorily infringing the '898 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of one or more claims of the '898 patent, including at least claim 17.  QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use.  At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that the QFT-Gold is especially made or especially adapted for a use that infringes the '898 patent, particularly because QFT-Gold uses the peptide antigens claimed by the '898 patent.  Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

38. Defendants' continued infringement of the '898 patent is willful.  For example, at least as of the filing of this Complaint, Defendants have known about the '898 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions constituted infringement of at least claim 17 of the '898 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

39. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '898 patent.  Oxford has been, and will continue to be, irreparably harmed

unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

## COUNT III
## Infringement of the '795 Patent

40. The allegations contained in paragraphs one through twenty-five are hereby incorporated by reference as though fully set forth herein.

41. Defendants are, and have been, on notice of the '795 patent, at least as of the filing of this lawsuit.

42. By making, using, selling, offering to sell in, and/or importing into, the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe one or more claims of the '795 patent, including at least claim 17, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '795 patent, including at least claim 17, under 35 U.S.C. § 271(a).

43. Qiagen is actively inducing infringement of at least claim 17 of the '795 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in, and/or import into, the United States, at least QFT-Gold. Qiagen has known of the '795 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more claims of the '795 patent, including at least claim 17. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

44. Qiagen is contributorily infringing the '795 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine,

11

manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of the '795 patent, including at least claim 17.  QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use.  At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that QFT-Gold is especially made or especially adapted for a use that infringes the '795 patent, particularly because QFT-Gold uses the peptide antigens claimed by the '795 patent.  Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

45. Defendants' continued infringement of the '795 patent is willful.  For example, at least as of the filing of this Complaint, Defendants have known about the '795 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions constituted infringement of at least claim 17 of the '795 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

46. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '795 patent.  Oxford has been, and will continue to be, irreparably harmed unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

## COUNT IV
### Infringement of the '211 Patent

47. The allegations contained in paragraphs one through twenty-five are hereby incorporated by reference as though fully set forth herein.

48. Defendants are, and have been, on notice of the '211 patent, at least as of the filing of this lawsuit.

49. By making, using, selling, offering to sell in, and/or importing into, the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe one or more claims of the '211 patent, including at least claim 1, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '211 patent, including at least claim 1, under 35 U.S.C. § 271(a).

50. Qiagen is actively inducing infringement of at least claim 1 of the '211 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in, and/or import into, the United States, at least QFT-Gold. Qiagen has known of the '211 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more claims of the '211 patent, including at least claim 1. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

51. Qiagen is contributorily infringing the '211 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of one or more claims of the '211 patent, including at least claim 1. QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use. At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that QFT-Gold is especially made or especially adapted for a use that infringes the '211 patent, particularly because QFT-Gold uses

13

the peptide antigens claimed by the '211 patent. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

52. Defendants' continued infringement of the '211 patent is willful. For example, at least as of the filing of this Complaint, Defendants have known about the '211 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions constituted infringement of at least claim 1 of the '211 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

53. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '211 patent. Oxford has been, and will continue to be, irreparably harmed unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

## COUNT V
## Infringement of the '821 Patent

54. The allegations contained in paragraphs one through twenty-five are hereby incorporated by reference as though fully set forth herein.

55. Defendants are, and have been, on notice of the '821 patent, at least as of the filing of this lawsuit.

56. By making, using, selling, offering to sell in, and/or importing into, the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe one or more claims of the '821 patent, including at least claims 1 and 6, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '821 patent, including at least claims 1 and 6, under 35 U.S.C. § 271(a).

57. Qiagen is actively inducing infringement of at least claims 1 and 6 of the '821 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in, and/or import into, the United States, at least QFT-Gold. Qiagen has known of the '821 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more claims of the '821 patent, including at least claims 1 and 6. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

58. Qiagen is contributorily infringing the '821 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of one or more claims of the '821 patent, including at least claims 1 and 6. QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use. At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that QFT-Gold is especially made or especially adapted for a use that infringes the '821 patent, particularly because QFT-Gold uses the peptide antigens claimed by the '821 patent. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

59. Defendants' continued infringement of the '821 patent is willful. For example, at least as of the filing of this Complaint, Defendants have known about the '821 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions

constituted infringement of at least claims 1 and 6 of the '821 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

60. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '821 patent. Oxford has been, and will continue to be, irreparably harmed unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

## COUNT VI
## Infringement of the '902 Patent

61. The allegations contained in paragraphs one through twenty-five are hereby incorporated by reference as though fully set forth herein.

62. Defendants are, and have been, on notice of the '902 patent, at least as of the filing of this lawsuit.

63. By making, using, selling, offering to sell in, and/or importing into, the United States, QFT-Gold and QFT-Plus, Qiagen has directly infringed and continues to directly infringe one or more claims of the '902 patent, including at least claim 1, under 35 U.S.C. § 271(a). By using, testing, selling, offering to sell in, and/or importing into, the United States, QFT-Gold, Quest and LabCorp have directly infringed and continue to directly infringe one or more claims of the '902 patent, including at least claim 1, under 35 U.S.C. § 271(a).

64. Qiagen is actively inducing infringement of at least claim 1 of the '902 patent by others, including the direct infringement by Quest and LabCorp described above, by, among other things, actively inducing and encouraging others to make, use, test, sell, offer to sell in, and/or import into, the United States, at least QFT-Gold. Qiagen has known of the '902 patent at least as of the filing of this Complaint, and knows and intends, or is willfully blind to the fact, that the actions of these direct infringers so induced constitute infringement of one or more

16

claims of the '902 patent, including at least claim 1. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(b).

65. Qiagen is contributorily infringing the '902 patent by selling, offering to sell in, and/or importing into, the United States, without authority, a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, such as QFT-Gold, knowing the same is especially made or especially adapted for use in an infringement of one or more claims of the '902 patent, including at least claim 1. QFT-Gold is not a staple article or commodity of commerce suitable for substantial noninfringing use. At all times relevant to this Complaint, and at least as of the filing of this Complaint, Defendants knew that QFT-Gold is especially made or especially adapted for a use that infringes the '902 patent, particularly because QFT-Gold uses the peptide antigens claimed by the '902 patent. Thus, Qiagen is liable for infringement under 35 U.S.C. § 271(c).

66. Defendants' continued infringement of the '902 patent is willful. For example, at least as of the filing of this Complaint, Defendants have known about the '902 patent, and knew, or were willfully blind to the fact, that there was an objectively high likelihood that their actions constituted infringement of at least claim 1 of the '902 patent, and all Defendants are continuing their acts of infringement despite such knowledge.

67. Oxford has been and continues to be damaged as a result of Defendants' infringement of the '902 patent. Oxford has been, and will continue to be, irreparably harmed unless the Defendants are enjoined by this Court from their infringing actions, and Oxford is without an adequate remedy at law.

**EXCEPTIONAL CASE**

68. The allegations contained in the preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

69. Based on, among other things, the facts set forth in the preceding paragraphs, including the Defendants' intentional and willful infringement of the '646, '898, '795, '211, '821, and '902 patents, this case is exceptional under 35 U.S.C. § 285, and Oxford is entitled to its reasonable costs and expenses of litigation, including but not limited to its attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Oxford respectfully requests that the Court enter a judgment and/or Order:

(a) Declaring that each Defendant has infringed the '646, '898, '795,'211, '821, and '902 patents in violation of 35 U.S.C. § 271(a), § 271(b), and/or § 271(c);

(b) Granting a preliminary and permanent injunction, enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from further infringement of the '646, '898, '795, '211, '821 and '902 patents;

(c) Awarding Oxford damages adequate to compensate for Defendants' infringing activities, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, all of these damages to be enhanced in an amount up to treble the amount of compensatory damages as justified under 35 U.S.C. § 284;

(d) Awarding Oxford pre-judgment and post-judgment interest on its damages;

(e) Declaring that this case is exceptional under 35 U.S.C. § 285 and awarding Oxford its reasonable costs and expenses of litigation, including attorneys' and experts' fees; and

(f) Awarding Oxford such other relief as the Court deems just and proper.

**JURY DEMAND**

Oxford hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues so triable.

Dated: August 10, 2015

Respectfully submitted,

/s/ *Steven M. Bauer*
Steven M. Bauer (BBO #542531)
Kimberly A. Mottley (BBO #651190)
Brendan S. Cox (BBO #669482)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
kmottley@proskauer.com
bcox@proskauer.com

-and-

Siegmund Y. Gutman (*pro hac vice* application forthcoming)
Amy E. Hayden (*pro hac vice* application forthcoming)
PROSKAUER ROSE LLP
2049 Century Park East
32nd Floor
Los Angeles, CA  90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
sgutman@proskauer.com
ahayden@proskauer.com


ATTORNEYS FOR PLAINTIFF
OXFORD IMMUNOTEC LTD.